## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| ANDREW ROBINSON; ASHLEY GADELHA; RAMON TORRES; individually, and on behalf of all others similarly situated, | Case No. ---------------- |
| | **CONSOLIDATED COMPLAINT FOR VIOLATIONS OF:** |
| Plaintiffs, | |
| | <u>**FLSA Collective Action**</u> |
| vs. | **1. THE FAIR LABOR STANDARDS ACT (29 U.S.C. §§ 201-219, C.F.R. § 531.35);** |
| ULTIMATE FITNESS GROUP, LLC, a Florida Limited Liability Company; DOUBLE EXCEL, LLC, dba ORANGETHEORY FITNESS a Florida Limited Liability Company; C&Z FIT, LLC dba ORANGETHEORY FITNESS, an Illinois Limited Liability Company; and DOES 1-1000, dba ORANGETHEORY FITNESS | <u>**FRCP 23 Class Action (State-Law Claims)**</u> |
| | **2. FLORIDA'S MINIMUM WAGE ACT ("FMWA") (Fla. Stat. § 448.110(3))** |
| | **3. ILLINOIS WAGE LAWS (820 ILCSv105/1, *et seq*., 820 ILCS § 115/1 *et seq*.); and** |
| Defendants. | **DEMAND FOR JURY TRIAL** |

1.   Plaintiffs Andrew Robinson, Ashley Gadelha, and Ramon Torres (collectively with Gadelha and Robinson, "Florida Class"), and Andrew Robinson also having been employed in Illinois (" Illinois Class"), (collectively, all plaintiffs are hereinafter "FLSA Class" or "Plaintiffs"), by and through their undersigned attorney, Michael L. Fradin, bring this action on behalf of themselves and all others similarly situated against defendant Ultimate Fitness Group, LLC, (Ultimate Fitness), the franchisor of Orangetheory Fitness gyms; Double Excel, LLC dba Orangetheory Fitness; C&Z Fit, LLC;  and DOES 1-1000 dba Orangetheory Fitness and allege as follows:

## INTRODUCTION

2.   As detailed herein, Defendant, Ultimate Fitness Group, LLC, employed a uniform policy whereby Plaintiffs and the members of the Classes (defined below) were required to regularly work for the benefit of the Defendants while their hours were not being recorded.

3.   As explained herein, under applicable employment laws, Plaintiffs and the members of the Classes are entitled to compensation for all hours worked. Due to Ultimate Fitness Group, LLC's policy of requiring them to work while they were off the clock, Plaintiffs and members of the Classes were not paid for the time they worked. As a result, Plaintiffs and members of the Classes were illegally undercompensated for their work.

4.   Plaintiffs bring this case against Ultimate Fitness Group, LLC and the other defendants for willfully violating the Fair Labor Standards Act ("FLSA") and Florida and Illinois labor laws. Plaintiffs bring the FLSA as a nationwide collective action to seek past-due wages and an equivalent amount in liquidated damages for putative class members who opt in.  Plaintiffs also bring supplemental state-law claims to recover broader remedies unavailable in FLSA actions and will seek to certify those state-law claims pursuant to Federal Rule of Civil Procedure 23 ("Rule 23").  It is well-settled in this jurisdiction that Rule 23 class actions can be combined (i.e., coexist) with collective actions brought under the FLSA.  *Ervin v. OS Restaurant Services, Inc.*, 632 F.3d 971, 973-79 (7th Cir. 2011).

5.   In addition to the wage and hour violations, the Florida Plaintiffs bring a claim against

Ultimate Fitness Group, LLC and Double Excel, LLC for violating the FLSA's anti-retaliation provision protecting employees who assert their rights under the FLSA. 29 U.S.C. § 215(a). The Illinois Plaintiff brings a claim against Ultimate Fitness Group, LLC and C&Z Fit, LLC for violating the FLSA's anti-retaliation provision. The purpose of the provision is to prevent fear of economic retaliation by forcing workers to quietly accept substandard conditions. The anti-retaliation provision under the FLSA protects oral as well as written complaints. *Kasten v. Saint-Gobain Performance Plastics Corp.*, 131 S.Ct. 1325 (2011). Double Excel, LLC and C&Z Fit, LLC retaliated against and took adverse action against the Plaintiffs for bringing concerns to management and supervisors about Defendant's illegal wage practices.

## THE PARTIES

6. The Plaintiffs in General

    a. Both the Illinois and Florida Plaintiffs will serve as adequate, typical and active participants and class representatives for the proposed FLSA Class, and their respective states under Rule 23. Plaintiffs shared the same titles and duties, and were equally affected by Ultimate Fitness's illegal wage practices. Ultimate Fitness has actual and constructive knowledge that Plaintiffs were performing work—every day and every workweek—for which they were not paid the minimum wage. Ultimate Fitness has actual and constructive knowledge that Plaintiffs were working more than 8 hours a day, more than 40 hours a week on a more than infrequent basis but were not paid one and a half times the rate of their regular pay. Ultimate Fitness has actual and constructive knowledge that Plaintiffs were required to work off the clock and perform activities in which they were not paid a wage. Plaintiffs have consented to sue for violations of the FLSA pursuant to 29 U.S.C. §§ 216(b) and 256.

7. The Florida Plaintiffs

    a. Plaintiffs Andrew Robinson, Ramon Torres, and Ashley Gadelha were employed by Ultimate Fitness in the state of Florida. Plaintiff Robinson was

employed by Ultimate Fitness at the Hunter's Creek, FL location as an Trainer from May 2015 to March 2016. Plaintiff Gadelha was employed by Ultimate Fitness at the Hunter's Creek, FL location from March 2015 to May 2016. Plaintiff Torres was also employed at Ultimate Fitness's Hunter's Creek, FL location.

8. The Illinois Plaintiffs

   a. Plaintiff Andrew Robinson was employed by Ultimate Fitness as an Trainer at Ultimate Fitness's Glenview, IL studio from March 2016 to May 2016.

9. Defendants

   a. Ultimate Fitness Group, LLC, the franchisor of Orangetheory Fitness, is a Florida Limited Liability Company. Ultimate Fitness Group, LLC's corporate headquarters is located in Fort Lauderdale, Florida. Ultimate Fitness Group, LLC owns and operates fitness centers throughout the United States and co-employed Plaintiffs and thousands of other Trainers nationwide. Defendant Double Excel, LLC, dba Orangetheory Fitness is a Florida Limited Liability Company. C&Z Fit, LLC dba Orangetheory Fitness is an Illinois limited liability company.

   b. The true names and capacities, whether individual, corporate, associate or otherwise, of defendants Does 1 through 1000 are unknown to Plaintiffs, who therefore sue these defendants by fictitious names. Plaintiffs further allege that each of these fictitious defendants is in some manner responsible for the acts and occurrences herein set forth. Plaintiffs will amend this Complaint to show these defendants' true names and capacities when ascertained, as well as the manner in which each fictitious defendant is responsible.

## JURISDICTION AND VENUE

10. This Court has federal question jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 16(b) of the FLSA, 29 U.S.C. § 216(b). This Court also has federal jurisdiction over this action under the Class Action Fairness Act of 2005 ("CAFA") because this is a class action

4

in which: (1) there are more than 100 class members in Plaintiffs' proposed classes; (2) Plaintiffs and members of the proposed classes have different citizenships from Defendants (i.e., the parties are minimally diverse); and (3) the claims of the proposed class members exceed $5,000,000 in the aggregate. See *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S.Ct. 547, 552 (2014), citing 28 U.S.C. 1332(d)(1)(2), (5)(B). In addition, this Court has supplemental jurisdiction over Plaintiffs' state-law claims because those claims derive from the same common conduct that led to violations of the FLSA; that is, the FLSA, Florida and Illinois claims all derive from the same common nucleus of operative facts. 28 U.S.C. § 1367.

11. Jurisdiction and venue as to Defendants are proper in this Court pursuant to 28 U.S.C. §§ 1331, 1332, and 216(b) of the FLSA, 29 U.S.C. § 216(b).

## FACTUAL ALLEGATIONS

### A. Ultimate Fitness Group, LLC

12. Ultimate Fitness Group, LLC created, manages, and controls Orangetheory Fitness gyms which employ trainers in hundreds of fitness centers throughout the United States. Ultimate Fitness describes themselves as providing "expertise with business plan development, paperwork and infrastructure" in the generation of new Orangetheory Fitness locations. The "Orangetheory Fitness" name is a reference to a particular style of workout coined and popularized by the gym. The Orangetheory brand prides itself on being on the forefront of the science and technology of exercise. According to the Orangetheory franchise website, Orangetheory has recently been, "ranked #60 in Inc. magazine's Fastest Growing Private Companies List . . . and #255 in Entrepreneur's 2016 Franchise 500® list of the top franchises in the world." Ultimate Fitness has achieved this success by intentionally engaging in deceitful and unlawful employment practices, including not paying Trainers for work performed, forcing employees to work off the clock, and taking retaliatory action against employees if these issues were brought forth to supervisors and management.

13. Orangetheory members can attend classes at any Orangetheory club and trainers often move from club to club. Ultimate Fitness Group, LLC oversees, controls, implements, and has authority over the instruction and management of all Orangetheory fitness trainers and

classes.

14. Ultimate Fitness Group, LLC was a joint employer of all Orangetheory trainers. Ultimate Fitness Group, LLC held authority over management and direct oversight of business affairs at all Orangetheory locations. As alleged below, Ultimate Fitness Group, LLC required the extra time that was spent by trainers that is the subject matter of this lawsuit. Ultimate Fitness Group, LLC created policies for teaching classes and held meetings at various locations which the trainers were required to attend and at which the policies were told to the trainers. These policies and manuals were provided verbally and in writing to the trainers and compliance with these policies and manuals was necessary for continued employment.

15. Orangetheory only offers classes - there is no one-on-one training. Ultimate Fitness's policy of requiring extra time from its Orangetheory trainers is the precise nature of this lawsuit. Ultimate Fitness knowingly required trainers to perform significant tasks off-the-clock and even provided a list of tasks required before class, after class, and during non-working hours. The additional hours that were unpaid are these precise hours that were mandated and controlled by Ultimate Fitness.

**B.  Ultimate Fitness failed to maintain accurate records of all hours worked and total overtime hours worked**

16. Ultimate Fitness willfully and continually forced trainers to perform various tasks and forms of labor without being clocked in. This means that the records of hours worked kept by Orangetheory Fitness locations do not reflect the actual amount of hours (and overtime hours) worked by trainers. These records are critical for an employer to ensure that they are fully paying their employees, "failure to keep accurate records can obscure a multitude of minimum wage and overtime violations." *See Wirtz v. Mississippi Publishers Corp.*, 364 F.2d 603 (5th Cir. 1966). Ultimate Fitness intentionally engaged in a uniform practice of not recording hours worked by Trainers which resulted in Plaintiffs not being paid for all hours worked and not being paid for one and a half times their regular wage for overtime work.

**C.  Ultimate Fitness did not pay Trainers for Each and Every Hour of Work**

17. Defendant failed to compensate their employees, namely their trainers, for all hours

6

worked at Orangetheory Fitness locations. Defendant did not allow trainers to record work hours and be clocked in when cleaning or preparing for class; they were only to be clocked in when teaching a class. This led to Orangetheory trainers being forced to work dozens of hours per week without compensation. Ultimate Fitness Group, LLC required its trainers to spend at least 30 minutes before class preparing for the class and socializing with customers attending the class; this time was routinely uncompensated. After their classes finished Orangetheory Fitness required their Trainers to clean up the gym facility that was used for their class. This work often took up to an hour and was also routinely done off the clock for no compensation. Trainers taught up to 30 classes per week.  Pursuant to written policies provided by the Defendant, each of these classes required over an hour of uncompensated work.  This requirement for spending extra time is mandated by policies published and enforced by Ultimate Fitness as conditions to continued employment.

18. Ultimate Fitness Group LLC controlled, instructed and had economic command and oversight on how Orangetheory franchises were to hire and train trainers, set and enforce operational requirements, and monitor trainer performance.  Most importantly, Ultimate Fitness, LLC provided regulations and rules over the franchisees and the employees over the uncompensated time that is the subject matter of this lawsuit.  Ultimate Fitness created and instituted policies requiring trainers to work off-the-clock hours that were above and beyond what was agreed upon in the trainers' contracts for employment and in violation of the employment agreements and as a willful and wanton violation of FLSA under either a weekly measuring rod, contract measuring rod, or hourly measuring rod. Ultimate Fitness Group, LLC never claimed any FLSA exemption for its noncompliance with the FLSA.  Ultimate Fitness Group LLC policy of only providing the manuals and policies requiring off-the-clock time to its employees after they have been hired is a deceitful policy indeed.

19. Ultimate Fitness Group, LLC maintained a policy for trainer performance and evaluation entitled, *The 30 Day Playbook for Head Trainer Fitness Coach Evaluation Form* (to be copied and handed to the coach).  This policy was not explained to the Trainers until after they were hired and added significant unpaid hours to the trainers' week.  The policy is

published on the Defendant's website and as part of its training and evaluation manual and policy for trainers and is a condition of its trainers' continued employment. It states that the trainer should plan an "Arrival 15-30 min prior to class start." Ultimate Fitness directly controlled this aspect of the trainer's workday. The classes are the Orangetheory brand – there are no individual personal training sessions. The *30 Day Playbook for Head Trainer Fitness Coach Evaluation Form* includes a list of required off-the-clock tasks for the trainers including but not limited to checking in, checking the room for neatness and cleanliness, pre-walking the studio to check the equipment, starting music, **coning off the treadmills**, and preparing visual aids. This time and these tasks were controlled by Ultimate Fitness and required for trainers' continued employment.

20. *The 30 Day Playbook for Head Trainer*, which is in a manual given to trainers for training and evaluation purposes and is maintained on Ultimate Fitness's website as a policy for Orangetheory Trainers, also includes a section entitled *Cool Down, Closing, and Focus Areas* that requires additional unpaid work of approximately 30 minutes, per class. These tasks include congratulating the class, stretching, explaining cardio routine, promoting attending future classes, announcing studio activities and events, telling class, staying after to answer questions, giving additional instructions, giving pre-booking instructions for the next class, and cleaning the room for the next class. Final classes of the day, on the other hand, required at least an hour of cleaning and preparation for the next day.

21. The economic reality of the joint employer relationship for employees does not end there. On the Ultimate Fitness Group, LLC website is a manual that is used by Ultimate Fitness Group, LLC to control the Trainers off-the-clock time after they are hired. *The 30 Day Playbook for Head Trainer* also includes a list of tasks that Trainers were required to perform off-the-clock and included the following: reviewing templates as soon as they are distributed, reading intro pages to see if there is anything new with the design or anything else to deliver the best Orangetheory workout, going through tread blocks and circling anything that needs to be set up together, reading the coaching notes for the tread blocks and adding notes to the template, going through tread blocks and rehearsing the night before, going through floor

8

blocks to figure out what E-learning to review, then reviewing that E-learning "to make sure you are showing the exercise the Orangetheory way," reading the coaching notes to be ready for options, challenges, and coaching cues, reading through the floor blocks the night before to determine best floor plan layout, and writing goals for the classes.

22. None of these additional tasks were part of the consideration bargained for in the trainers' contract of employment. Ultimate Fitness deceived and mislead the trainers by promising them a competitive hourly rate to teach classes. Those trainers who also had non-training time (floor time) were promised a different hourly rate for the floor time. Then, once the trainers had agreed upon the conditions of their employment, Ultimate Fitness informed the trainers that the company policy required additional off the clock hours that would be compensated at neither the instruction hourly rate or the floor time hourly rate. All trainers received the manual and the instructions shortly after agreeing to the terms of their employment. There was no additional consideration for the additional hours, which were paid at a rate of $0.00.

23. Ultimate Fitness Group, LLC directed, controlled, and supervised the work performed by Plaintiffs, modified the Plaintiffs' employment conditions, had a long term relationship with Plaintiffs of an indefinite duration requiring regular meetings and compliance with policies, manuals, rules, and regulations, oversaw the work performed by Plaintiffs, and ensured that the Orangetheory classes were rote, repetitive, and uniform. The Orangetheory classes that the trainers taught and the additional time spent off-the-clock by the trainers are integral to the Ultimate Fitness Group, LLC's business—in fact it is their business. Ultimate Fitness Group, LLC provided the manuals and policies and training to the trainers—these manuals, which were not provided until after the trainers had entered into their employment contracts, not only mandate hours of additional unpaid work for every hour worked but also willfully mandate overtime hours in wanton disregard of the FLSA and with no assertion, not even a bad faith assertion, of an FLSA exemption.

24. Ultimate Fitness Group, LLC maintains a website, orangetheoryfitness.com, and it also demonstrates the economic reality of the joint employer relationship between Ultimate

Fitness Group, LLC and its franchisees. The website refers to Orangetheory class participants as "our members" and the studio staff as "our staff." Furthermore, the members are encouraged to go to classes at any Orangetheory location. For site criteria, it states, *if you're a landlord or broker, and would like to see if your available location meets the site and demographic criteria for a new OTF studio, please complete our site submittal form below. We will then run our internal evaluation and contact you if your location meets our criteria to discuss other aspects of the site in further detail.* On the site it provides potential members with sign-up options of Orange Basic (4 sessions per month), Orange Elite (8 sessions per month) and Orange Premier (unlimited sessions). It also states, *Orangetheory Fitness is actively pursuing new locations in existing markets and other select areas throughout the country. In general, we look for upscale orientated locations in both established and growing markets. An Orangetheory studio will drive unique, high-income consumers to the retail location every day.* It also states, *Stop by a studio and **our staff members** will explain the options so you can choose what's best for you. First time? Drop in for a free session – it's on us* (emphasis added). Clearly, Ultimate Fitness views the Orangetheory trainers as its staff.

25. The economic realities of the joint employer relationship between the franchisees and Ultimate Fitness Group, LLC does not end there either. Ultimate Fitness Group, LLC individually employs Retail Directors whose jobs it is to *interface with **independently-owned and operated franchise fitness studios** to assure a consistent and smooth execution of the Company's retail sales strategy* (emphasis added). Another duty listed on the Essential Job Functions for the Retail Directors is to *assist studios with training guides and seminars*.

26. The economic realities of the joint employment relationship between Ultimate Fitness Group, LLC and the franchisees does not end there either. Ultimate Fitness Group, LLC individually employs Regional Fitness Managers whose duties further demonstrate the economic reality of the relationship. The Regional Fitness Managers have a hand in almost all aspects of the franchisee's operations, including *presenting and facilitating OT FIT Certification training seminars for local Orangetheory Fitness Studios*. The Regional Fitness Managers *Essential Job Functions* include the following:

10

a. Teach Orange 60 fitness classes and fitness training workshops in order to educate studio owners on best practices.

b. Practice regular independent, discretionary judgment in order to ensure OTC strict guidelines are being followed.

c. Must submit monthly schedule and weekly reports to direct supervisor outlining work hours and activities performed.

d. Perform evaluations of fitness trainers and provide mentoring for improvement as needed.

e. Present Continuing Education Classes as needed.

f. Work with the Corporate fitness team with video training modules as needed.

g. Assist with studio compliance audits as needed. This includes assisting and auditing entire studio operations in addition to the fitness team evaluations.

h. ***Assist in local franchise training as needed.***

These Regional Fitness Managers were also trainers (also referred to as studio fitness coaches). As the final Essential Job Function listed on the Ultimate Fitness Group, LLC website as of the time of the filing of this lawsuit, states:

i. Studio Fitness Coaching must be performed outside of the required 40 hours in the role of RFM

Yet overtime was not paid for these additional hours, without any assertion of an exemption by Ultimate Fitness. This extraordinary and blatant violation of the FLSA is inexcusable.

**D. Ultimate Fitness did not pay Trainers overtime for work performed in excess of 8 hours in a workday or more than 40 hours in a workweek.**

27. Trainers often worked over 40 hours in a workweek. This time spent working overtime hours went unrecorded due the Trainers being forced to perform the previously mentioned tasks off-the-clock.

11

**E. Ultimate Fitness knew or should have known Trainers were working uncompensated hours.**

28. Florida Plaintiffs brought their concerns regarding trainers being forced to work off-the-clock to supervisors of respective Orangetheory Fitness locations. No change in company policy was made in response to these complaints to ensure that trainers were paid for all of the hours in which they worked at Orangetheory Fitness locations. Plaintiff Andrew Robinson brought his concerns to upper management at the Orangetheory Fitness location in Hunter's Creek and was retaliated against. Plaintiff Ashley Gadelha also voiced concern to management about uncompensated gatherings and was eventually retaliated against. Plaintiff Ramon Torres was similarly retaliated against for bringing his concerns to management at the Hunter's Creek, Florida Orangetheory Fitness location.

29. Ultimate Fitness wilfully required that the trainers engage in all of these work-related activities without compensation. Ultimate Fitness willfully violated FLSA by requiring trainers to perform these tasks and duties "off the clock."

**F. Facts common to all Class Members**

30. By design, the job duties of trainers are virtually identical from region to region, district to district, facility to facility, and employee to employee. Any differences in job activities between the different individuals in these positions were and are legally insignificant to the issues presented by this action. The same policies, procedures, employee handbooks, manuals, and compensation plan were distributed to the trainers. As such, the policies, practice and procedures are uniformly applied to the trainers which means individual issues will not predominate, and in fact, all issues are systematically linked, related and common, both in terms of facts and law. The extra time required of trainers by Ultimate Fitness is published on their website and is distributed to every trainer after the terms of their employment is agreed upon. This additional off-the-clock time was mandated by Ultimate Fitness as a condition to the trainers' continued employment. As of the filing date of this complaint, Ultimate Fitness continues to publish these policies, which blatantly violate the FLSA, on their website and, upon information and belief, are still distributing these documents

12

to trainers.

31. The Orangetheory workout is based on group classes only—the uniformity of the classes is a goal of Ultimate Fitness and it held regular meetings with trainers and created policies and manuals to enforce this uniformity. The policy for trainers of the Orangetheory classes requires all trainers, nationwide and uniformly, to work uncompensated hours and overtime directly before and after each class as well as the night before a class, all in blatant violation of the FLSA.

32. Ultimate Fitness did not keep accurate records of all the hours worked by trainers by not allowing them to clock in for various work-related tasks.

33. Ultimate Fitness regularly, uniformly, and systematically failed to pay trainers the minimum wage for each and every hour worked.

34. Ultimate Fitness regularly, uniformly, and systematically required trainers to work more than 8 hours in a day or more than 40 hours per week, but did not pay them overtime.

35. In light of the above allegations, the trainers were not and have not been paid all wages due to them. Defendant's unlawful scheme has resulted in "wage theft." Plaintiffs have brought this action to recover for themselves, and all similarly situated trainers, the wages pilfered by Ultimate Fitness.

**FLSA CLASS DEFINITION AND ALLEGATIONS**

36. Plaintiffs bring the First Claim for Relief for violations of the FLSA as a collective action pursuant to § 16(b) of the FLSA, 29 U.S.C. § 216(b). Plaintiffs bring the FLSA action on behalf of themselves and all members of the following class (the "FLSA Class") comprised of:

**A. FLSA CLASS**

    **a.** All individuals in positions, job titles, job codes, job classifications or job descriptions of instructor, coach, trainer, or personal trainer "Trainers" and all other similar nomenclature performing substantially identical functions and/or duties, currently or formerly employed by Ultimate Fitness at Orangetheory Fitness gyms in the United States who were not paid the minimum wage or overtime for all hours

13

worked.

37. Plaintiffs and the members of the FLSA Class are similarly situated in that they have substantially similar job classifications, job duties, job requirements, and were subject to Defendants' common practice, policy, or scheme of willfully and unlawfully forcing Trainers to work off the clock so that they would not earn minimum wage or overtime pay.

38. The First Claim for Relief for violations of the FLSA may be brought and maintained as "opt-in" collective action pursuant to § 16(b) of the FLSA, 29 U.S.C. § 216(b), since the claims of the Plaintiffs are similar to the claims of the members of the FLSA Class.

39. The names, addresses and telephone numbers of the members of the FLSA Class are available from Ultimate Fitness Group, LLC, and notice should be provided to the members of the FLSA Class via first class mail to their last address known as soon as possible

## FLORIDA CLASS DEFINITIONS AND RULE 23 ALLEGATIONS

40. Florida Plaintiffs bring the Second and Third Claims for Relief for violation of Florida's labor laws as a class action pursuant to Rule 23(a), (b)(2), and (b)(3). Florida Plaintiffs bring these claims on behalf of themselves and all members of the following class (the "Florida Class") comprised of:

**A. Florida Class**

All Florida-based individuals in positions, job titles, job codes, job classifications, or job descriptions of instructor, coach, trainer, or personal trainer (Trainers) and all other similar nomenclature performing substantially identical functions and/or duties currently or formerly employed by Ultimate Fitness at Orangetheory Fitness locations who were not paid at least minimum wage for all hours they worked and were not paid one and a half times the rate of their regular pay for overtime hours worked.

**B. Rule 23 Allegations**

**1. Numerosity (Rule 23(a)(1)).**

41. The potential quantity of members of the proposed Florida Class as defined is so numerous that joinder of all members would be unfeasible and impractical. Florida Plaintiffs are

14

informed and believe that the total number of current and formerly employed members of the Florida Class number is in the hundreds. The quantity and identity of such membership is readily ascertainable via inspection of Ultimate Fitness's employment and payroll records.

## 2. Existence of Common Questions of Law and Fact (Rule 23(a)(2)).

42. There are common questions of law and fact as to the members of the Florida Class which predominate over questions affecting only individual members which include, but are not limited to, the following:

    a. Whether Defendants failed to keep accurate records of all hours worked and wages earned by members of the Florida Class;

    b. Whether Defendants failed to pay members of the Florida Class the minimum wage in violation of the Florida Minimum Wage Act § 448.110(3).

    c. Whether the members of the Florida Class are entitled to compensatory damages, and if so, the means of measuring such damages;

    d. Whether the members of the Florida Class are entitled to injunctive relief;

    e. Whether the members of the Florida are entitled to restitution; and

    f. Whether Defendants are liable to members of the Florida Class for attorneys' fees and costs.

## 3. Typicality (Rule 23(a)(3)).

43. The claims of the Florida Plaintiffs are typical of the claims of all members of the Florida Class they seek to represent because all members of the Florida Class sustained injuries and damages arising out of Defendants' common scheme to maximize profits by skimming wages from Trainers.

## 4. Adequacy Rule (23(a)(4)).

44. Florida Plaintiffs are adequate representatives of the proposed Florida Class they seek to represent because will fairly protect the interests of the members of the Florida Class, they have no interests antagonistic to the members of the Florida Class, and they will vigorously pursue this suit via attorneys who are competent, skilled and experienced in litigating matters of this type.

15

**5. Injunctive and Declaratory Relief (Rule 23(b)(2)).**

45. Class certification of the Second and Third Claims for Relief is appropriate pursuant to Rule 23(b)(2) because Ultimate Fitness has acted or refused to act on grounds generally applicable to the members of the Florida Class, so that final injunctive relief as requested herein is appropriate respecting the Florida Class as a whole.

**6. Predominance and Superiority of Class Action (Rule 23(b)(3)).**

46. The nature of this action and the nature of the laws available to members of the Florida Class make the use of the class action format particularly efficient and the appropriate procedure to afford relief to them for the wrongs alleged herein, for the following reasons:

    a. By establishing a technique whereby the claims of many individuals can be resolved at the same time, the class suit both eliminates the possibility of repetitious litigation and provides small claimants with a method of obtaining redress for claims which would otherwise be too small to warrant individual litigation;

    b. This case involves a large number of individual class members with many relatively small claims. If each individual member was required to file an individual lawsuit, Ultimate Fitness would necessarily gain an unconscionable advantage because it would be able to exploit and overwhelm the limited resources of each individual class member with its vastly superior financial and legal resources;

    c. Requiring each individual member to pursue an individual remedy would also discourage the assertion of lawful claims by class members, who would be disinclined to pursue action against Ultimate Fitness because of an appreciable and justifiable fear of retaliation and permanent damage to their lives, careers and well-being;

    d. Proof of a common business practice to maximize profits through wage theft will provide the common proof to establish liability against Defendant;

    e. Absent class treatment, the prosecution of separate actions by the individual

16

members of the Florida Class, even if possible, would likely create:

    i)    a substantial risk of each individual plaintiff presenting in separate, duplicative proceedings the same or essentially similar arguments and evidence, including expert testimony;

    ii)    a multiplicity of trials conducted at enormous expense to both the judicial system and the litigants;

    iii)    inconsistent or varying verdicts or adjudications; and

    iv)    potentially incompatible standards of conduct for Ultimate Fitness.

f.    The claims of the individual members of the Florida Class are not sufficiently large to warrant vigorous individual prosecution considering all of the concomitant costs and expenses attendant thereto;

g.    Courts seeking to preserve efficiency and other benefits of class actions routinely fashion methods to manage any individual questions; and

h.    Judicial precedent urges trial courts, which have an obligation to consider the use of innovative procedural tools to certify a manageable class, to be procedurally innovative in managing class actions.

47. Finally, adjudicating this action on a class basis is appropriate because liability turns on Ultimate Fitness's own uniform and systematic scheme to maximize profits by depriving its Trainers of wages, overtime wages, and forcing Trainers to work off the clock. Class-wide liability can be determined through manageable devices of common proof such as statistical random sampling, survey evidence based on scientific principles, representative testimony, documentary evidence and Defendant's common policies and practices. Once liability is determined, the damages suffered by each member can also be determined by the same common proof.

48. Florida Plaintiffs do not contemplate class notice if the Florida Class is certified under Rule 23(b)(2), which does not require notice, and notice to the putative Class may be accomplished through publication, or other forms of distribution, if necessary, if the Class is

17

certified under Rule 23(b)(3), or if the Court otherwise determines class notice is required. Florida Plaintiffs will, if notice is so required, confer with Ultimate Fitness and seek to present the Court with a stipulation and proposed order on the details of a class notice program.

## ILLINOIS CLASS DEFINITIONS AND RULE 23 ALLEGATIONS

49. Illinois Plaintiffs bring the Fourth and Fifth Claims for Relief for violation of Illinois' wage and hour laws as a class action pursuant to Rule 23(a), (b)(2), and (b)(3). Illinois Plaintiffs bring these claims on behalf of themselves and all members of the following class (the "Illinois Class") comprised of:

**A. Illinois Class**

All Illinois-based individuals in positions, job titles, job codes, job classifications, or job descriptions of instructor, coach, trainer, or personal trainer (Trainers) and all other similar nomenclature performing substantially identical functions and/or duties currently or formerly employed by Ultimate Fitness at Orangetheory Fitness locations who were not paid at least minimum wage for all hours they worked and were not paid one and a half times the rate of their regular pay for overtime hours worked.

**B. Illinois Subclasses**

50. In the alternative, and for the convenience of the Court and the parties, Illinois Plaintiffs may seek to certify the following subclasses at the time the motion for class certification is filed:

**1. Illinois Minimum Wage Subclass**

All Members of the Illinois Class who Defendants failed to pay the Illinois minimum for each hour worked during the Illinois Class Period.

**2. Illinois Overtime Subclass**

All Members of the Illinois Class who (1) worked in excess of eight hours per day and/or 40 hours per week; and (2) who Defendants failed to pay wages at the requisite overtime rates of pay for hours overtime worked during the Illinois Class Period.

**C. Rule 23 Allegations**

18

### 1. Numerosity (Rule 23(a)(1)).

51. The Illinois Class and Subclasses are so numerous that joinder of all members is impracticable. Illinois Plaintiffs are informed and believe, and on that basis allege, that Ultimate Fitness employed hundreds of persons who satisfy the definition of the Illinois Class or Subclasses.

### 2. Existence of Common Questions of Law and Fact (Rule 23(a)(2)).

52. Common questions of law and fact exist as to the Illinois Plaintiffs and members of the Illinois Class or Subclasses including, but not limited to, the following:

   a. Whether Defendants unlawfully failed to pay members of the Illinois Class or Illinois Minimum Wage Subclass the minimum wage in violation of the Illinois Minimum Wage Law ("IMWL"), 820 ILCSv105/1, et seq.;

   b. Whether Defendants unlawfully failed to pay members of the Illinois Class or Illinois Overtime Subclass overtime compensation in violation of the Illinois Wage Payment and Collection Act ("IWPCA"), 820 ILCS § 115/1, et seq.;

   c. Whether Defendants unlawfully failed to keep and maintain accurate records of the hours worked by members of the Illinois Class or Subclasses as required by applicable law; and

   d. The damages sustained and the proper measure of restitution recoverable by members of the Illinois Class or Subclasses.

### 3. Typicality (Rule 23(a)(3)).

53. Illinois Plaintiffs' claims are typical of the members of the Illinois Class' or Subclasses' claims. The Illinois Plaintiffs, like other members of the Illinois Class or Subclasses, were subjected to the Defendants' illegal scheme to maximize profits by depriving Trainers of the basic minimum wage and overtime compensation.

### 4. Adequacy (Rule 23(a)(4)).

54. The Illinois Plaintiffs will fairly and adequately represent and protect the interests of the members of the Illinois Class or Subclasses. The Illinois Plaintiffs retained counsel competent and experienced in complex class actions, the FLSA, and state labor and employment litigation.

### 5. Injunctive and Declaratory Relief (Rule 23(b)(2)).

55. Class certification of the Tenth through Eleventh Claims for Relief is appropriate pursuant to Rule 23(b)(2) because Defendant acted or refused to act on grounds generally applicable to the members of the Illinois Class or Subclasses, making appropriate declaratory relief with respect to the members of the Illinois Class or Subclasses as a whole.

### 6. Predominance and Superiority of Class Action (Rule 23(b)(3)).

56. Class certification of the Tenth through Eleventh Claims for Relief is also appropriate under Rule 23(b)(3) because questions of law and fact common to members of the Illinois Class or Subclasses predominate over any questions affecting only individual members of those classes, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Ultimate Fitness's common and uniform policies and practices illegally deprived all Trainers of wages; thus, making the question of liability and damages much more manageable and efficient to resolve in a class action, compared to hundreds of individual trials. The damages suffered by individual members of the Illinois Class or Subclasses are small compared to the expense and burden of individual prosecution of this litigation. In addition, class certification is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Ultimate Fitness's practices.

57. The Illinois Plaintiffs intend to send notice to all members of the Illinois Class or Subclasses to the extent required by Rule 23.

### CLAIMS FOR RELIEF

**A. First Claim for Relief brought by Plaintiffs, on behalf of themselves and the FLSA Class, against Ultimate Fitness Group, LLC and all Defendants for failure to pay the minimum wage (29 U.S.C. § 206), and for failure to pay overtime 29 U.S.C. §§ 201, et seq.)**

58. Plaintiffs reallege and incorporate by this reference each of the proceeding and foregoing paragraphs as if fully set forth herein.

59. At all relevant times, Ultimate Fitness Group, LLC was an "employer" engaged in interstate "commerce" and/or in the production of "goods" for "commerce," within the meaning of

20

the FLSA, 29 U.S.C. § 203. At all relevant times, Ultimate Fitness Group, LLC employed "employee[s]," including Plaintiffs and each member of the FLSA Class. At all relevant times, Ultimate Fitness Group, LLC had gross operating revenues in excess of $500,000. Attached hereto are the Consent to Join Forms signed by Plaintiffs in this action pursuant to § 16(b) of the FLSA, 29 U.S.C. §§ 216(b) and 256.

60. The FLSA is the nation's basic law governing wages and hours of work, sets the minimum wage and contains standards as to when employers must pay overtime. Code of Federal Regulations § 531.35 provides that employers must pay all statutorily-required minimum wage and overtime premium finally and unconditionally, or "free and clear." The FLSA requires each covered employer such as Defendants, to compensate all nonexempt employees at a rate of not less than the federal minimum wage during the FLSA Class Period. The FLSA also requires each covered employer, such as Defendants, to compensate all nonexempt employees at a rate of not less than one and one-half times the regular rate of pay for work performed in excess of 40 hours in a workweek.

61. Ultimate Fitness Group, LLC is a large limited-liability company and should have known the requirements of the FLSA or, at least through reasonable research or investigation or communication with their corporate counsel or legal department, that their pay practices violated the FLSA. Ultimate Fitness Group, LLC clearly has the resources to determine whether they are in compliance with the FLSA, but continued the illegal scheme due to profits, instead of considering the welfare of its employees. That is, Ultimate Fitness Group, LLC made a rational decision, based on a cost/benefit analysis, that it was more profitable to continue with the scheme, instead of changing the scheme to comply with the law. Therefore, Ultimate Fitness Group, LLC willfully, voluntarily, deliberately and intentionally violated the FLSA and did not have a "good faith" belief they were in compliance with the FLSA. The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of the 29 U.S.C. § 255(a).

62. By failing to pay Plaintiffs, and the members of the FLSA Class, at a rate not less than the minimum wage, Ultimate Fitness Group, LLC violated the FLSA, 29 U.S.C. § 206. By failing to compensate Plaintiffs, and the members of the FLSA Class, at a rate not less than one and one-half

times the regular rate of pay for work performed in excess of 40 hours in a workweek, Ultimate Fitness Group, LLC violated the FLSA, 29 U.S.C. §§ 201 et seq., including 29 U.S.C. §§ 207(a)(1) and 215(a). By failing to record, report, and/or preserve records of hours worked by Plaintiffs and the members of the FLSA Class, Ultimate Fitness Group, LLC failed to make, keep, and preserve records with respect to each of their employees sufficient to determine their wages, hours, and other conditions and practice of employment, in violation of the FLSA, 29 U.S.C. §§ 201 et seq., including 29 U.S.C. §§ 211(c) and 215(a).

63. Plaintiffs and the members of the FLSA Class are entitled to past-due wages, an equivalent amount in liquidated damages, costs, and attorneys' fees, as provided by the FLSA, 29 U.S.C. § 216(b), interest, and such other legal and equitable relief as the Court deems just and proper.

**B. Second Claim for Relief brought by Florida Plaintiffs, on behalf of themselves and the Florida Class, against Ultimate Fitness Group, LLC, Double Excel, LLC and unknown Florida DOES dba Orangetheory Fitness for violating Florida's Minimum Wage Act ("FMWA") (Fla. Stat. § 448.110(3))**

64. Plaintiffs re-allege and incorporate by reference all the preceding paragraphs, as if fully set forth herein.

65. As alleged above, Florida Plaintiffs and members of the Florida Class were consistently and uniformly not paid the minimum wage for all the work they performed during the course of their employment with Defendants. Defendants' policy and practice was to force Florida Plaintiffs and members of the Florida Class to work off the clock to cut costs and increase profits. Defendants' unlawful conduct was neither inadvertent, nor de minimis, but widespread, repeated and part of a pattern and practice of conduct affecting Florida Plaintiffs and all members of the Florida Class.

66. Defendants permitted, consented, and had actual or constructive knowledge the Florida Plaintiffs and members of the Florida Class were working off the clock because Defendants planned and required attendance at events which are considered work being done off the clock. Additionally,

22

Defendants required labor, such as cleaning gym facilities and equipment before and after classes, to be done off the clock.

67. As a result of the foregoing, Florida Plaintiffs and the members of the Florida Class have been damaged in an amount to be determined at trial. The FMWA contains a two-year statute of limitations regardless of whether the violation was willful (the "Florida Class Period"). See Fla. Stat. § 448.110. Therefore, the Florida Plaintiffs and members of the Florida Class are entitled to back wages and attorneys' fees and costs.

**C. Third Claim for Relief brought by Plaintiffs, individually, against Ultimate Fitness Group, LLC, Double Excel, LLC and C&Z Fit, LLC for violating the FLSA's Anti-Retaliation Provision (29 U.S.C. § 215(a)).**

68. Plaintiffs re-allege and incorporate by reference all the preceding paragraphs, as if fully set forth herein.

69. The FLSA contains a strong "anti-discrimination" or other anti-retaliation provision protecting employees who have asserted their rights under the law. Section 215(a) of the FLSA provides as follows:

> [I]t shall be unlawful for any person * * * to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee.

70. The Plaintiffs complained to management about the illegal wage practices alleged above. After the complaints, the Plaintiffs had classes removed from their schedule—effectively lowering their pay. This retaliatory action was taken after the Plaintiffs raised concerns about the uncompensated labor; therefore there is a causal connection between the protected activity and the adverse employment action.

71. As a result of the Defendants' retaliation against the Plaintiffs in violation of the FLSA's anti-retaliation provisions, the Plaintiffs are entitled to, among other things, back pay, attorney's fees and costs, and other forms of relief necessary to make the Plaintiffs whole.

23

**D. Fourth Claim for Relief brought by Illinois Plaintiffs, on behalf of themselves and the Illinois Class, against Ultimate Fitness Group, LLC, C&Z Fit, LLC and unknown Illinois DOES dba Orangetheory Fitness for Violating the Illinois Minimum Wage Law ("IMWL") (820 ILCSv105/1, *et seq*.).**

72. Plaintiffs re-allege and incorporate by reference all the preceding paragraphs, as if fully set forth herein.

73. As alleged above, Illinois Plaintiffs and members of the Illinois Class were consistently and uniformly not paid the minimum wage for all the work they performed during the course of their employment with Defendants. Defendants' policy and practice was to force Illinois Plaintiffs and members of the Illinois Class to work off the clock to cut costs and increase profits. Defendants' unlawful conduct was neither inadvertent, nor de minimis, but widespread, repeated and part of a pattern and practice of conduct affecting Illinois Plaintiffs and all members of the Illinois Class.

74. Defendants permitted, consented, and had actual or constructive knowledge the Illinois Plaintiffs and members of the Illinois Class were working off the clock because Defendants planned and required attendance at events which are considered work being done off the clock. Additionally, Defendants required labor, such as cleaning gym facilities and equipment before and after classes, to be done off the clock.

75. As a result of the foregoing, Illinois Plaintiffs and the members of the Illinois Class have been damaged in an amount to be determined at trial. The IMWL contains a three-year statute of limitations regardless of whether the violation was willful (the "Illinois Class Period). See 820 ILCS 105/12(a). Therefore, the Illinois Plaintiffs and members of the Illinois Class are entitled to back wages and attorneys' fees and costs.

**E. Fifth Claim for Relief brought by Illinois Plaintiffs, on behalf of themselves and the Illinois Class, against Ultimate Fitness Group, LLC, C&Z Fit, LLC, and unknown Illinois DOES dba Orangetheory Fitness for Violating the Illinois' Wage Payment and Collection Act ("IWPCA") (820 ILCS § 115/1, *et seq*.).**

24

76. Plaintiffs re-allege and incorporate by reference all the preceding paragraphs, as if fully set forth herein.

77. Illinois Plaintiffs and members of the Illinois Class were not paid their wages for a significant amount of work for which were promised to be paid and that was performed in the course of their employment with Defendants.

78. At all relevant times herein, Defendants were "employer[s]" as defined in the IWPCA, 820 ILCS 115/1, et seq., and Illinois Plaintiffs and similarly situated persons were "employee[s]" within the meaning of the IWPCA. Defendant was at all times aware of their obligation to pay its hourly employees for all time they worked and are aware of the compensation actually paid to Illinois Plaintiffs and the Illinois Class.

79. Defendants agreed to compensate its employees, including Illinois Plaintiffs and members of the Illinois Class, at an hourly rate for all hours worked. However, Defendants instituted practices that resulted in its employees working certain time without any compensation. The Illinois Plaintiffs and members of the Illinois Class were instructed by Defendants to work off the clock as part of its policy and practice, resulting in the Defendants failing to compensate Illinois Plaintiffs and the members of the Illinois Class for all the time they worked, including overtime.

80. Therefore, Illinois Plaintiffs and the members of the Illinois Class are entitled to unpaid wages, and attorneys' fees and costs.

## PRAYER FOR RE LIEF

WHEREFORE, Plaintiffs, on behalf of themselves and all members of the Plaintiff Classes they seek to represent, pray for relief as follows:

1. For an order certifying that the First Claim for Relief of this Complaint may be maintained as a collective action pursuant to 29 U.S.C. § 216(b) and that prompt notice of this action be issued to potential members of the opt-in FLSA Class, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims;

2. For an order certifying that the Second Claim for Relief be maintained as a class action pursuant to Rule 23 on behalf of the members of the Florida who were either employed or

who performed work in the State of Florida during the Florida Class Period and that notice of the pendency of this action be provided to members of the Florida Class.

3. For an order certifying that the Fourth and Fifth Claims for Relief be maintained as a class action pursuant to Rule 23 on behalf of the members of the Illinois Class and/or Illinois Subclasses who were either employed or who performed work in the State of Illinois during the Illinois Class Period and that notice of the pendency of this action be provided to members of the Illinois Class and/or Subclasses;

4. Designation of Plaintiffs as the Class Representatives for the FLSA Class;

5. Designation of the Florida Plaintiffs as the Class Representatives for the Florida Class;

6. Designation of the Illinois Plaintiff as the Class Representative for the Illinois Class and/or Subclasses;

7. Designation of Plaintiffs' attorney as Class Counsel for both the FLSA Class, Florida Class, and/or Illinois Class and/or Subclasses;

8. A declaratory judgment that the practices complained of herein are unlawful under appropriate state law;

9. Appropriate equitable relief to remedy Defendants' violations of state law, including but not necessarily limited to an order enjoining Defendants from continuing its unlawful practices;

10. For an award of unpaid minimum wages and liquidated damages in an amount equal to the amount unlawfully unpaid pursuant to the FLSA, Illinois Minimum Wage and Florida Minimum Wage Act § 448.110.

11. For an award of unpaid Federal minimum wages for each hour worked as required by the FLSA, 29 U.S.C. §206;

12. For an award of unpaid Florida minimum wages for each hour worked as required by Florida Minimum Wage Act § 448.110(c)1.

13. For an award of unpaid Illinois minimum wages for each hour worked as required by the Illinois Minimum Wage Law ("IMWL") (820 ILCS 105/1, *et seq*.).

26

14. For an award of unpaid wages pursuant to the Illinois' Wage Payment and Collection Act ("IWPCA") (820 ILCS § 115/1, *et seq*).

15. All unpaid overtime as calculated by the applicable provision of the FLSA, 29 U.S.C. §§ 201 et seq., and applicable regulations promulgated in the Code of Federal Regulations and/or opinions and directives of the Department of Labor;

16. All appropriate state and federal statutory penalties;

17. An award of compensatory damages to the extent available, liquidated damages pursuant to the FLSA, and restitution to be paid by Defendants according to proof;

18. Unpaid overtime premium compensation as provided by federal and Illinois law for overtime hours worked;

19. Pre-Judgment and Post-Judgment interest, as provided by law;

20. Such other equitable relief as the Court may deem just and proper; and

21. Attorneys' fees and costs of suit, including expert fees and fees pursuant to the Florida Minimum Wage Act § 448.110(c)1, the Illinois Minimum Wage Law (820 ILCS 105/12), and the Illinois' Wage Payment and Collection Act ("IWPCA") (820 ILCS § 115/14 and other applicable state laws and as permitted by the FLSA.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial on all causes of action and claims with respect to which they each have a state and/or federal constitutional right to a jury trial.

Respectfully Submitted:


s/ Michael L. Fradin

Michael L. Fradin, Attorney at Law.



Michael L. Fradin, Attorney at Law
8401 Crawford Ave. Ste. 104, Skokie, IL 60076
Phone: 847-644-3425
Fax: 847-673-1228
mike@fradinlaw.com